IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELSON RYDER, | Civil No. 3:25-cv-792 |
| Plaintiff | (Judge Mariani) |
| v. | |
| BENJAMIN SCOTT, | |
| Defendant | |

### MEMORANDUM

Plaintiff Nelson Ryder ("Ryder"), an inmate housed at the State Correctional Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"), initiated this action pursuant to 42 U.S.C. § 1983 against Chaplain Benjamin Scott, seeking monetary damages and injunctive relief based principally on alleged violations of his First and Fourteenth Amendment rights and a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1] (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 23).

Presently before the Court is Defendant's motion (Doc. 25) to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part.

---

[1] Ryder also seeks a declaration that his rights have been violated in the past. (Doc. 23 ¶¶ 64-65). As set forth herein, declaratory relief is unavailable to adjudicate past conduct, therefore Ryder's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").

I.      **Allegations of the Second Amended Complaint**

In December of 2018, Ryder's religious preference was recorded in the Department of Corrections' ("DOC") system as Seventh Day Adventist ("SDA"). (Doc. 23, ¶ 10). Ryder was transferred to SCI-Mahanoy on June 19, 2019, and learned that there were allegedly no religious services offered for Seventh Day Adventists at that facility. (*Id.* ¶ 11). On January 10, 2023, Ryder submitted a request slip to Chaplain Scott, seeking his supervision over a Seventh Day Adventist study group on Saturday afternoons. (*Id.* ¶ 18). Chaplain Scott denied this request, stating that there was no current Seventh Day Adventist approved leader to supervise the group. (*Id.*).

On January 17, 2023, Ryder sent a new request slip seeking approval for an outside Seventh Day Adventist organization to send religious videos for communal viewing under the supervision of a chaplain. (*Id.* ¶ 19). Chaplain Scott denied this request as follows: "[a]s I wrote in your request dated January 13, 2024, a faith group leader must be identified and cleared as a volunteer. Multiple inmates must also send me a similar request. Central officer must approve. Mahanoy administration must approve. Direct supervision must be located for the day and time proposed. Substance of meetings must be presented and approved…And there are several more requirements…The focal point to this will be locating an SDA faith leader and having that person approved through Mahanoy's volunteer process (my office)." (*Id.* ¶ 21). Ryder alleges that Chaplain Scott did not explore the least restrictive means to accommodate his request. (*Id.* ¶ 23).

After receiving Chaplain Scott's decision, Ryder filed Grievance Number 1018268 on January 27, 2023, wherein he requested approval from the Facility Manager, in conjunction with the Religious Services Administrator, to communally view the religious videos. (*Id.* ¶¶ 25, 61). On February 6, 2023, Jeanne Macknight, Chaplain Scott's supervisor, responded to Grievance Number 1018268. (*Id.* ¶ 26). The response indicated that Chaplain Scott's denial was not solely based on the lack of a volunteer to lead the group. (*Id.*). Jeanne Macknight stated that, in addition to the requirement of a volunteer needed to lead the group, additional requirements must also be met according to policy. (*Id.*). Jeanne Macknight indicated that Ryder's request would be processed once it was "completed per policy guidelines." (*Id.*). Ryder pursued this grievance to final review, and, on May 9, 2023, the Chief Grievance Officer upheld the initial response, indicating that proper steps were outlined that needed to be adhered to in order to have the request processed. (*Id.* ¶¶ 29, 62).

On February 14, 2023, Ryder submitted another accommodation request on "an official Religious Accommodation Request Form." (*Id.* ¶ 26). In this request, Ryder included written efforts in locating a Seventh Day Adventist volunteer and sought written approval for the showing of religious videos. (*Id.*). On February 23, 2023, Chaplain Scott denied Ryder's request, again for failure to meet policy requirements. (*Id.* ¶ 28).

On or about May 5, 2023, Chaplain Scott met with Ryder regarding his request to reinstate his religious diet. (*Id.* ¶ 37). During this meeting, Chaplain Scott informed Ryder

that a series of Seventh Day Adventist religious videos were provided to the institution. (*Id.*). However, these videos were not screened for viewing because a Seventh Day Adventist volunteer was not found. (*Id.* ¶ 38).

On September 28, 2023, an outside pastor of the Seventh Day Adventist religion, Robert Snyder, was approved to serve as a Seventh Day Adventist faith leader. (*Id.* ¶ 46). Pastor Snyder conducted bi-weekly Seventh Day Adventist group Bible study class and a Seventh Day Adventist worship service on the third Saturday of each month, beginning in October of 2023. (*Id.*).

After the Bible study group on October 12, 2023, Chaplain Scott met with Ryder and Pastor Snyder regarding external email communication between Ryder and Pastor Snyder. (*Id.* ¶ 47). Chaplain Scott explained that such communication was not permitted, and that Pastor Snyder would have to be removed from Ryder's visitor list as Snyder could not be a spiritual advisor and volunteer faith group leader at the same time. (*Id.*).

On October 26, 2023, Pastor Snyder informed Ryder that Chaplain Scott denied the request for Ryder to serve as an inmate peer assistant while Snyder was away on vacation because "[Seventh Day Adventist] is not a primary religious gathering." (*Id.* ¶ 50). Ryder was further informed that "[i]f Pastor Snyder, volunteer, cannot attend, the service or study will be cancelled." (*Id.*).

In December of 2023, Ryder received a misconduct for the unauthorized use of mail when he "drafted a written proposal on behalf of Pastor Snyder seeking approval for one

4

ceremonial religious meal in 2024 and, then, sent it by e-mail to Pastor Snyder through an outside church member." (*Id.* ¶ 54). Pastor Snyder then sent the email to Chaplain Scott who reported this conduct as a violation of Policy 1.1.6, prohibiting contact between an inmate and volunteer through an outside source. (*Id.*). Pastor Snyder's volunteer status was then terminated. (*Id.* ¶ 55). Ryder further states that he was placed on a seven-day cell restriction. (*Id.* ¶ 56). Additionally, the Seventh Day Adventist videos that were provided to SCI-Mahanoy were discarded and the digital versions were removed from the internet. (*Id.*). Ryder alleges that all Seventh Day Adventist religious activities were terminated and the group of nine Seventh Day Adventist inmates was disbanded. (*Id.* ¶ 58).

After the termination of Pastor Snyder in December of 2023, Ryder states that another individual, Wesley Charles, was approved in July of 2024 to serve as the volunteer faith group leader for Seventh Day Adventists. (Doc. 12 ¶ 14). Ryder asserts that volunteer Wesley Charles conducts bi-weekly Bible studies on Saturdays. (*Id.*).

Ryder avers that "[w]ith regard to Plaintiff's claims for declaratory relief, Chaplain Scott is sued in his official capacity. With regard to Plaintiff's claims predicated on violations of the Department of Corrections ("DOC") Code of Ethics for Employees, Chaplain Scott is sued in his individual capacity, and his official capacity respectively." (Doc. 23 ¶ 4). Ryder seeks declaratory and injunctive relief, attorney's fees, and costs. (*Id.* ¶¶ 64-69).

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that a claim, on its face, is "insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2012). A facial challenge "requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)).

A factual challenge maintains "that there is no subject matter jurisdiction because the facts of the case…do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis*, 824 F.3d at 346 (quoting *Aichele*, 757 F.3d at 358) (internal quotation marks omitted). When a factual challenge is made, the plaintiff has the burden of proof that jurisdiction does exist, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

B.  Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.  Discussion

Defendant moves to dismiss the second amended complaint on the following grounds: (1) Defendant Scott, acting in his official capacity, is not a "person" within the meaning of 42 U.S.C. § 1983; (2) the violation of a DOC policy does not create a private

8

cause of action; and (3) Ryder's claim for declaratory relief is moot. (Doc. 31). The Court will address each argument in turn.

### A. Official Capacity Claims

The Commonwealth of Pennsylvania "is not a 'person' subject to suit" under 42 U.S.C. § 1983. *Whiteford v. Penn Hills Municipality*, 323 F. App'x 163, 166 (3d Cir. 2009) (citing *Will v. Mich Dep't of State Police* 491 U.S. 58, 69-70 (1989)) (states or governmental entities that are "arms of the State" are not "persons" for purposes of section 1983). The DOC "is a part of the executive department of the Commonwealth," and thus an entity of the Commonwealth. *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing Pa. Stat. Ann., tit. 71, § 61). As such, it also is not a person subject to suit under section 1983. *See Adams v. Hunsberger*, 262 F. App'x 478, 481 (3d Cir. 2008). Furthermore, a "claim against a state actor in his or her official capacity is tantamount to lodging the claim against the state itself, since it is the real party in interest." *Francis ex rel. Est. of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 385-86 (M.D. Pa. 2009) (citing *Will*, 491 U.S. at 71). Therefore, except as discussed below, a claim against a DOC official in his official capacity is likewise not cognizable under § 1983. *See Alston v. Nat'l Conf. of Bar Examiners*, 314 F. Supp. 3d 620, 626 (E.D. Pa. 2018) (holding that "[n]either a State nor its officials acting in their official capacities are persons under § 1983") (quoting *Hafer v. Melo*, 502 U.S. 21, 26 (1991)). In addition, the Eleventh Amendment forbids actions for money damages in the federal courts

against states, their agencies, and state officials acting in their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).

The foregoing principles preclude a § 1983 claim for money damages against the DOC as well as its officials and employees in their official capacities. But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n. 10. And "claims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity." *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (citing *Perry v. Pennsylvania Dep't of Corr.*, 441 F. App'x 833, 836 (3d Cir. 2011)). To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective…" *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). In determining whether the Eleventh Amendment bars the claim, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (alteration in original) (citation omitted). "This exception to the Eleventh Amendment is a very narrow one, permitting plaintiffs to

seek prospective relief, and only when a state official and not the State or a state agency is the named defendant." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). "The exception has no application where the lawsuit, although naming a state official, is more correctly construed as a suit against the State, which is completely barred by the Eleventh Amendment regardless of the relief sought." *Id.*

To the extent that Ryder asserts a claim for money damages against Defendant Scott in his official capacity, this claim will be dismissed. Ryder's claim for injunctive relief against Defendant Scott in his official capacity will also be dismissed because he does not allege that there is a continuing prohibition on practicing his religion—Ryder confirms that "[i]n July of 2024, Wesley Charles was approved to serve as a volunteer faith group leader of a Seventh Day Adventist bi-weekly group Bible study and worship service on Saturdays." (Doc. 12 ¶ 14; Doc. 35, at 4). However, Ryder's claim for money damages against Defendant Scott in his individual capacity is permissible under § 1983.

B.  Violation of DOC Policy

Ryder alleges that Defendant Scott violated the "DOC's Code of Ethics for Employees." (Doc. 23 ¶¶ 5-8). "[A] prison policy manual does not have the force of law and does not rise to the level of a regulation" and "a violation of internal policy does not automatically rise to the level of a Constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232,

11

235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension"). Accordingly, Ryder has not alleged a plausible constitutional violation based on the violation of a DOC policy. This claim will be dismissed.

### C. Ryder's Claim for Declaratory Relief is Moot

In the second amended complaint, Ryder seeks declaratory relief. (Doc. 23 ¶¶ 64-67). However, the type of relief that he seeks is not the proper subject of a declaratory judgment. "The purpose of a declaratory judgment is to 'declare the rights of litigants.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Although "[t]here is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights[,]" a "[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity." *Wenzig v. Serv. Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2756 (2021). "The remedy is thus by definition prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628. Here, however, Ryder is not seeking prospective relief. Rather, he is improperly seeking a declaration that his rights were

violated in the past. In sum, Ryder is not properly seeking prospective declaratory relief against Defendant Scott.

IV. **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The legal defects in Ryder's claim for money damages against Defendant Scott in his official capacity, his claim regarding the violation of DOC policy, and his claim for declaratory relief cannot be cured by amendment and those claims will be dismissed with prejudice.

V. **Conclusion**

Consistent with the foregoing, Defendant's motion (Doc. 25) to dismiss will be granted in part and denied in part. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 29, 2025